RECORD NO. 17-1356

In The

# United States Court of Appeals

For The Fourth Circuit

## MATTHEW DWOSKIN; RANDI DWOSKIN; JENNIFER DECKER; TERESA BUTLER; LINDA CAMPBELL; LINDA CUADRA; ALFRED FIGLEY; KELLY DILLS; STEFANI DILLS; MICHAEL WALSH; JENNIFER WALSH; PHILLIP WERTHEIMER; JOANN WOODS; SHAWN WOODS; KERRIE ZIPPRICH,

*Plaintiffs – Appellants*,

### SEAN DECKER,

*Intervenor/Plaintiff – Appellant*,

v.

### BANK OF AMERICA, N.A.,

*Defendant – Appellee*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT BALTIMORE
_____

BRIEF OF APPELLANTS
_____

| | | |
|---|---|---|
| James C. White | Richard D. Heideman | Leonard B. Simon |
| PARRY TYNDALL WHITE | Noel J. Nudelman | LAW OFFICES OF |
| 100 Europa Drive, Suite 401 | Tracy Reichman Kalik | LEONARD B. SIMON, P.C. |
| Chapel Hill, North Carolina 27517 | HEIDEMAN NUDELMAN & KALIK P.C. | 655 West Broadway, Suite 1900 |
| (919) 246-4676 | 1146 19th Street, N.W., Suite 500 | San Diego, California 92101 |
| | Washington, DC 20036 | (619) 338-4549 |
| | (202) 463-1818 | |
| | | |
| *Counsel for Appellants* | *Counsel for Appellants* | *Counsel for Appellants* |
| | | |
| Dhamian Blue | Richard S. Wayne | |
| BLUE LLP | STRAUSS & TROY, LPA | |
| 205 Fayetteville Street, Suite 300 | 150 East 4th Street | |
| Raleigh, North Carolina 27601 | Cincinnati, Ohio 45202 | |
| (919) 833-1931 | (513) 621-2120 | |
| | | |
| *Counsel for Appellants* | *Counsel for Appellants* | |

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. **17-1356**      Caption: Matthew Dwoskin v. Bank of America, NA

Pursuant to FRAP 26.1 and Local Rule 26.1,

See attached list
(name of party/amicus)

who is _____ appellants _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.   Does party/amicus have any parent corporations?   ☐ YES ☑ NO
     If yes, identify all parent corporations, including all generations of parent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO
     If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐ YES ☑ NO
    If yes, identify entity and nature of interest:


5.  Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:


6.  Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:


Signature: /s/Tracy Reichman Kalik          Date:    March 31, 2017

Counsel for: Appellants

## CERTIFICATE OF SERVICE
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I certify that on ___March 31, 2017___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

See attached Service List


/s/Tracy Reichman Kalik                              03/31/2017
     (signature)                                        (date)

## LIST OF PARTIES REPRESENTED

**Plaintiff-Appellants**

Teresa Butler

Linda Campbell

Linda Cuadra

Sean Decker

Jennifer Decker

Kelly Dills

Stefani Dills

Matthew Dwoskin

Randi Dwoskin

Alfred Figley

Jennifer Walsh

Michael Walsh

Phillip Wertheimer

JoAnn Woods

Shawn Woods

Kerrie Zipprich

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...........................................................................iv

JURISDICTIONAL STATEMENT ..............................................................1

STATEMENT OF THE ISSUES.....................................................................2

I.     STATEMENT OF THE CASE .............................................................2

    A.     The Nature of the Claims ........................................................2

    B.     Proceedings in the District Court ...........................................7

        1.     Motions to Dismiss ......................................................7

        2.     The Appellants Were Only Allowed to Engage in
             Limited Discovery with No Depositions of Their
             Choosing ....................................................................10

        3.     The Bank Moves for Summary Judgment and Appellants
             Respond by Disputing the Facts with Substantial
             Evidence, Invoking Rule 56(d), and Also Cross-Moving
             on a Narrow Issue Not Implicating Factual Dispute ...............12

        4.     Appellants' Motions for Reconsideration, and Newly
             Discovered Evidence; the Bank's Motion to Dispose of
             State Law Claims ......................................................17

        5.     Notice of Appeal ......................................................19

II.    SUMMARY OF ARGUMENT...............................................................19

III.   ARGUMENT...........................................................................21

    A.     The District Court Erred in Granting the Bank's Motion for
        Summary Judgment on the Federal HPA Claim .................................21

i

1. The Applicable Standard on a Motion for Summary Judgment ...................................................................21

2. Bank of America "Required" Mortgage Insurance for Appellants' Loans .................................................23

    a. A Plain Reading of the Word "Required" and the Statute Confirms That Bank of America Did, in Fact, "Require" The Purchase of Mortgage Insurance ......................................................................23

    b. The Bank "Required" Mortgage Insurance Because When It Closed on Appellants' Loans, It Intended to Purchase Mortgage Insurance ....................26

    c. Appellants Produced Sufficient Evidence to Allow a Jury to Find That They Paid for the LPMI in the Form of Higher Interest Rates .........................................29

B. The District Court Improperly Denied Appellants' Right to Conduct Full Discovery Under Rule 30 And Committed Reversible Error Under Rule 56(d) When It Denied Appellants' Request to Take Depositions of Persons of Their Choosing .............30

1. Discovery Was Limited in Derogation of Rules 26 and 30......31

2. The District Court Improperly Denied Appellants' Invocation of Rule 56(d) ..........................................................34

C. The District Court's Subsequent Grant of Summary Judgment on the State Law Claims was Error Because the Declaration from Mr. Wadsworth Plainly Put a Crucial Fact in Dispute..............38

D. The District Court's Denial of Appellants' Motion for Reconsideration Based on Newly Discovered Evidence Was Error........................................................................................................39

IV. CONCLUSION...........................................................................................41

V.     REQUEST FOR ORAL ARGUMENT........................................................42

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..............................................................22, 31

*AT & T Corp. v. Iowa Utilities Bd.*,
525 U.S. 366 (1999)......................................................................25

*Augustson v. Bank of Am., N.A.*,
864 F. Supp. 2d 422 (E.D.N.C. 2012) ..........................................26

*Baber v. Hosp. Corp. of Am.*,
977 F.2d 872 (4th Cir. 1992) ........................................................37

*Boryan v. United States*,
884 F.2d 767 (4th Cir. 1989) ........................................................40

*Caminetti v. United States*,
242 U.S. 470 (1917)......................................................................25

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)......................................................................37

*Charbonnages de France v. Smith*,
597 F.2d 406 (4th Cir. 1979) ........................................................22

*Commodity Futures Trading Comm'n v. Midland Rare Coin Exchange, Inc.*,
1999 U.S. Dist. LEXIS 16939 (S.D. Fla. 1999) ...................... 35-36

*Felty v. Graves-Humphreys Co.*,
818 F.2d 1126 (4th Cir. 1987) ......................................................21

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000)......................................................................25

*Fowler v. United States*,
    563 U.S. 668 (2011)......................................................................25

*Hardt v. Reliance Standard Life Ins. Co.*,
    560 U.S. 242 (2010)......................................................................24

*Henley v. FMC Corp.*,
    20 F. App'x 108 (4th Cir. 2001) ..................................................40

*Hillman v. I.R.S.*,
    263 F.3d 338 (4th Cir. 2001) ................................................ 24-25

*King v. Burwell*,
    __ U.S. ___, 135 S. Ct. 2480, 192 L. Ed. 2d 483 (2015) .............25

*Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*,
    285 F.R.D. 481 (N.D. Cal. 2012) ................................................35

*McCray v. Maryland Dep't of Transp.*, *Maryland Transit Admin.*,
    741 F.3d 480 (4th Cir. 2014) .........................................34, 35, 38

*McPherson v. Wells Fargo Bank, N.A.*,
    292 F.R.D. 695 (S.D. Fla. 2013)..................................................32

*Medlin v. Andrew*, 1
    113 F.R.D. 650 (M.D.N.C. 1987)................................................33

*Mitchell Eng'g v. City & Cty. of San Francisco*,
    No. C 08-04022 SI, 2010 WL 455290
    (N.D. Cal. Feb. 2, 2010) .............................................................35

*Myhre v. Seventh-Day Adventist Church Reform*
*Movement Am. Union Int'l Missionary Soc.*,
    298 F.R.D. 633 (S.D. Cal. 2014) ................................................32

*Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*,
    316 F.R.D. 327 (D. Nev. 2016) ..................................................32

*O'Connor v. Wells Fargo Home Mortgage, Inc.*,
    No. 1:08-CV-0281-JEC, 2011 WL 248006
    (N.D. Ga. Jan. 24, 2011) .......................................................................8, 9, 26

*Overstreet v. Kentucky Cent. Life Ins. Co.*,
    950 F.2d 931 (4th Cir. 1991) .......................................................................21

*Pierce v. Ford Motor Co.*,
    190 F.2d 910 (4th Cir. 1951) .......................................................................22

*Potter v. Potter*,
    199 F.R.D. 550 (D. Md. 2001) ............................................................... 39-40

*Rousey v. Jacoway*,
    544 U.S. 320 (2005).......................................................................25

*Salter v. Upjohn Co.*,
    593 F.2d 649 (5th Cir. 1979) .......................................................................33

## STATUTES

12 U.S.C. §§ 4901, *et seq*...........................................................................1

12 U.S.C. § 4905 ........................................................................................5

12 U.S.C. § 4905(a)(2)...............................................................................23

12 U.S.C. § 4905(c) ..............................................................................5, 15

12 U.S.C. § 4905(c)(1)................................................................................5

12 U.S.C. § 4905(c)(1)(C) ..........................................................................6

12 U.S.C. § 4905(c)(1)(B)(i)...................................................................6, 28

12 U.S.C. § 4907(a) ....................................................................................6

12 U.S.C. § 4907(a)(2)...............................................................................29

28 U.S.C. § 1291 ........................................................................................1

28 U.S.C. § 1331 ...................................................................................1

28 U.S.C. § 1367(a) .............................................................................1

**RULES**

Fed. R. Civ. P. 26 .....................................................................31, 32, 33

Fed. R. Civ. P. 26(d) ..........................................................................11

Fed. R. Civ. P. 26(d)(2)(A) ................................................................31

Fed. R. Civ. P. 30 .....................................................................30, 31, 32, 33

Fed. R. Civ. P. 30(a) ..........................................................................11

Fed. R. Civ. P. 30(b)(1) ...............................................................*passim*

Fed. R. Civ. P. 30(b)(6) ...............................................................*passim*

Fed. R. Civ. P. 54(b) .................................................................19, 21, 39

Fed. R. Civ. P. 56 ...............................................................................33

Fed. R. Civ. P. 56(c) ..........................................................................22

Fed. R. Civ. P. 56(d) .................................................................*passim*

**OTHER AUTHORITIES**

8 Wright & Miller, *Federal Practice and Procedure*, § 2037 (1986 Supp.)...........33

Webster's New Int'l Dictionary (3d. ed. 1993) ....................................25

# JURISDICTIONAL STATEMENT

Appellants are several home purchasers[1] who filed claims against their lender, Appellee Bank of America, N.A. (the "Bank"), arising under the Homeowners Protection Act of 1998, 12 U.S.C. § 4901, *et seq.* (the "HPA"), and supplemental state law claims sounding in unjust enrichment and consumer protection laws.

The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises, in part, under the laws of the United States. The district court exercised supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a). This appeal is from the final judgment of the district court that was filed on February 24, 2017. Appellant borrowers gave timely notice of appeal on March 16, 2017. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

---

[1] Appellants are: Matthew and Randi Dwoskin of Maryland, Sean and Jennifer Decker of Maryland, Teresa Butler of Florida, Linda Campbell of New Mexico, Donna Cuadra and Alfred Figley of California, Kelly and Stefani Dills of Texas, Michael and Jennifer Walsh of New York, Phillip Wertheimer of Washington, JoAnn and Shawn Woods of Arizona, and Kerrie Zipprich of Illinois.

## STATEMENT OF THE ISSUES

i.      Whether the district court erred when it granted the Bank's motion for summary judgment on Appellant borrowers' HPA claims because the private mortgage insurance in question was not "required" by the Bank, even though Appellants had no choice but to have the insurance placed on their loans, and even though a crucial fact (at least to the district court) was disputed.

ii.     Whether the district court erred when it did not permit the Appellant borrowers to take any depositions of natural persons, pursuant to Fed. R. Civ. P. 30(b)(1), and then granted summary judgment against them for lack of evidence.

iii.    Whether the district court erred when, having denied Appellants the right to take any depositions of natural persons, and faced with other sworn assertions of insufficient discovery to oppose the motion, it entered summary judgment against them notwithstanding their invocation of Fed. R. Civ. P. 56(d).

iv.    Whether the district court erred when it refused to vacate its rulings on summary judgment, despite Appellants' proffer of newly discovered evidence showing that summary judgment was inappropriate.

v.     Whether the district court erred when it granted the Bank's motion for summary judgment on the borrowers' state law claims on purportedly the same basis as the award of summary judgment on the federal claims but without further explanation, even though the relevant facts were now even more clearly in dispute.

## I.    STATEMENT OF THE CASE

### A.    The Nature of the Claims

The Consolidated and Amended Class Action Complaint (the "Complaint") in this case alleges that beginning in 2007, Bank of America deceptively marketed a loan product called "No Fee Mortgage Plus" (the "No Fee" loan) to borrowers

across the country. J.A. at 61, 65. The Bank represented to prospective home purchasers that those who obtained a No Fee loan (a) would not be charged any fees in connection with the closing; and (b) would not have Private Mortgage Insurance ("PMI") on their loans. *Id.* The Bank, like other lenders, typically required a borrower to carry PMI when a home's loan-to-value ratio is greater than 80 percent of the collateral property's fair market value. *Id.* at 65. The No Fee loan product was attractive to home buyers, such as Appellant borrowers, because they could avoid closing fees and PMI.

Despite this promise, the Bank secretly and without any notice before or after the event, placed PMI on Appellant borrowers' loans. *Id.* at 71. The Bank paid for the PMI, and thus it is commonly referred to as "lender paid mortgage insurance," or LPMI.[2] Given the very nature of LPMI, which Congress has described as "a mortgage insurance product that the consumer pays for through a higher interest rate on his or her loan" and a product in which payments "are built into the cost of the loan and capitalized over the life of the loan[,]" the Appellant borrowers alleged and set out to prove that the Bank (1) unlawfully failed to disclose its prior intent and subsequent action in placing LPMI on their loans, and

---

[2] There are two types of PMI – "borrower paid mortgage insurance," which is not at issue in this case, and LPMI. J.A. at 65-66. When a lender obtains LPMI, it usually pays a single premium at or after loan closing with full disclosure to the borrower, and then passes that cost to the borrower by charging the borrower a higher interest rate. *Id.* at 66.

(2) charged higher interest rates to subsidize the cost of the LPMI (and the waiving of closing costs), which resulted in (3) more expensive loans that were also difficult to refinance due to the PMI, all in violation of the HPA and certain state laws. *See id.* at 78-80.

Each of the Appellant borrowers in this case (on behalf of a putative class of home purchasers) set forth a set of facts that are consistent with the above narrative. *See id.* at 67-71. As the district court described the facts alleged by Appellants Mathew and Randi Dwoskin:

> Matthew and Randi Dwoskin live in a home at 9104 Belvedere Drive in Frederick, Maryland, which they purchased through a mortgage from Bank of America, N.A. (the "Bank"). The Dwoskins researched loan terms, conditions, and market rates before selecting Bank of America and its "No Fee Mortgage Plus" program (the "No Fee" program) to finance their new home.

*Id.* at 37 (internal citations omitted).

> The Dwoskins applied for a residential loan with the Bank and were approved . . . through the No Fee program. This loan amount represented more than 80% of the value of the property for which they sought the mortgage, which typically would mean the Dwoskins would have to obtain either PMI or LPMI. The Dwoskins claim that in accepting the Bank's approval of their loan, they relied on the Bank's promise that their loan was truly no fee and that no PMI would be required. The Dwoskins closed on the loan on December 9, 2008, when they executed a 30-year mortgage in favor of the Bank in the amount of $500,564 at a fixed interest rate of 6.375%. At settlement, the Dwoskins were presented with a statement that showed no evidence the Bank had placed LPMI on the property and the Bank provided no written disclosures of any intent to place LPMI on the property. The Dwoskins claim the Bank misrepresented its intention

4

of placing LPMI on the property by hiding or omitting the fact from the disclosures made at closing.

*Id.* at 38 (internal citations omitted).

The Complaint alleges that the placement of PMI on borrowers' mortgages had unfortunate consequences for them beyond the higher interest rate. *See id.* at 62, 72-73. As the district court noted:

> In 2009, the Dwoskins attempted to refinance their mortgage under the Home Affordable Refinance Program ("HARP") through the Bank. At that time, they learned the Bank had paid for LPMI on their home without their knowledge or consent. The Dwoskins assert that because of the previously undisclosed LPMI, they were unable to qualify for refinancing under HARP.

*Id.* at 38-39 (internal citations omitted).

Appellants contend that the Bank's failure to disclose its purchase of the PMI violates the HPA. *Id.* at 61, 76-78. The HPA states that in any case in which "lender paid mortgage insurance . . . is required in connection with a residential mortgage transaction," the mortgagee must provide certain written disclosures "not later than the date on which a loan commitment is made." 12 U.S.C. § 4905(c). Specifically, the lender must inform the borrower of the PMI, and that the borrower cannot cancel the PMI, which will terminate only if the mortgage is refinanced. *Id.* § 4905(c)(1). Additionally, § 4905 requires a lender to inform a borrower of the differences between LPMI and BPMI. *Id.* For example, a lender must disclose that LPMI "usually results in a residential mortgage having a higher

5

interest rate than it would in the case of" BPMI. *Id.* § 4905(c)(1)(B)(i). A lender must also disclose:

> that lender paid mortgage insurance and borrower paid mortgage insurance both have benefits and disadvantages, including a generic analysis of the differing costs and benefits of a residential mortgage in the case [sic] lender paid mortgage insurance versus borrower paid mortgage insurance over a 10-year period, assuming prevailing interest and property appreciation rates[.]

*Id.* § 4905(c)(1)(C).

Bank of America did not make any of these HPA disclosures to the Dwoskins, other Appellants borrowers, or any other members of the putative class. J.A. at 71, 78. Rather, the borrowers did not find out that the Bank had acquired LPMI for their loans unless and until they tried to refinance their loans, which they could not do because of the LPMI. *Id.* at 72.

Violation of the HPA provides for the recovery of actual damages, statutory damages without proof of actual damages, costs, and attorney's fees. 12 U.S.C. § 4907(a). Thus a violation of the Act would generate damages even if a plaintiff could not prove that a higher interest rate had been charged, a central issue on this appeal.

The Complaint also alleges supplemental state law claims arising not only from the failure to disclose the Bank's secret purchase of LPMI, but also from the Bank's affirmative misrepresentations concerning its promise to waive or pay for

fees, and not to employ PMI, and the unjust enrichment the Bank received as a result thereof. J.A. at 78-80.

## B.    Proceedings in the District Court

### 1.    Motions to Dismiss

The Bank filed motions to dismiss both the original complaint and the consolidated complaint. The first motion was denied in full. *Id.* at 36. The second motion was "denied almost in its entirety[.]" *Id.* at 113.[3]   In its first motion to dismiss, the Bank argued that it had no duty to make the HPA disclosures because no LPMI was "required" on the Dwoskin loan. *Id.* at 41. It contended that "required" means "required as a condition of the loan." *Id.* Further, according to the Bank, because it did not require itself to obtain LPMI on the Dwoskin loan at origination, the disclosure requirements did not apply. *Id.* Rather, from its standpoint, it did not decide to obtain LPMI on the Dwoskin or any other No Fee loans until after the loans were made because of "unforeseen and unprecedented market events." *Id.*

The Dwoskins opposed the motion by arguing that the Bank suggested a far too narrow reading of what "required" means under the HPA. *Id.* They argued

---

[3] Appellant Woods did not oppose the dismissal of her claim arising under the Arizona Consumer Fraud Act. *Id.* at 113, n1. Three of the plaintiffs in the case below who are not parties to this appeal also did not oppose the dismissal of their state law claims. *Id.*

that interpreting "required" to mean "required as a condition of the loan" before closing would mean that banks could circumvent the HPA's disclosure requirement by simply purchasing LPMI after closing …." *Id.* at 41-42. As was proved in the limited discovery Appellants conducted, that was exactly the case here.

In denying the Bank's first motion to dismiss, the district court agreed with the Dwoskins, finding the timing of the LPMI non-dispositive, and citing with approval one of the very few reported cases interpreting the HPA, *O'Connor v. Wells Fargo Home Mortgage*, *Inc.*, No. 1:08-CV-0281-JEC, 2011 WL 248006 (N.D. Ga. Jan. 24, 2011):

> In *O'Connor*, the court directly addressed the meaning of "required" within § 4905. *See O'Connor*, 2011 WL 248006, at *3–4. The defendant Bank in that case contended § 4905 only mandates disclosure when mortgage insurance is secured prior to closing and argued insurance obtained after closing cannot be deemed "required" under § 4905. *Id.* at *3. As the *O'Connor* court noted, however, "the plain language of the HPA does not impose any time limits on the disclosure requirements associated with LPMI." *Id.* The statute states only that disclosures are necessary whenever mortgage insurance is "required in connection with a residential mortgage transaction." 12 U.S.C. § 4905(c). Such language "does not explicitly or implicitly limit the application of the disclosure requirements to cases where the lender has secured mortgage insurance prior to closing." *O'Connor*, 2011 WL 249006, at *3.

J.A. at 43.

> The Court rejected, "[b]ased on the plain language of the HPA," the Bank's argument that after-acquired mortgage insurance can never qualify as required LPMI. *Id.* Despite the fact that LPMI was not placed on the loan until five days after closing, the [*O'Connor*] court found, in denying the bank's summary judgment motion, that "evidence suggests that the insurance was 'required' by defendant's standard business practices and by its investors." *Id.*

*Id.* at 44 (citing *O'Connor*, 2011 WL 248006, at *3).

Additionally, with respect to the Bank's excuse that the "LPMI was only taken out after unforeseen and unprecedented market events[,]" and therefore "the loan[s] did not require LPMI[,]" the district court observed, "[w]hether these statements were in fact false will be an issue in the case going forward, but taken in the light most favorable to the plaintiffs, the complaint can be read to allege that the Bank misrepresented an intention to place LPMI on No Fee mortgage loans." *Id.* at 44. (The Bank's statements were, in fact, false. By the time the Bank purchased LPMI for each and every Appellant borrowers' loan, the market events were no longer unforeseen, and the Bank had determined, long before closing, that it would purchase LPMI for every single eligible No Fee loan, including Appellants'.)

After the remaining Appellant borrowers joined the Dwoskins in filing and consolidating the Complaint, the Bank again sought dismissal on very similar grounds. *See id.* at 117 (stating that "the Bank attempts to re-raise two arguments decided on its previous motion to dismiss"). The district court again rejected the

9

Bank's arguments for dismissal. In so doing, the court relied upon its analysis in denying the Bank's prior motion to dismiss, and further explained that "the fact that the LPMI was not taken out until after the [plaintiffs] closed on their loan does not defeat an argument that LPMI was required on their loan." *Id.* at 118. "Disclosure may be required under the HPA even if LPMI is placed on a mortgage after a loan commitment is made and the Bank had no prior intention to do so." *Id.*[4]

## 2. The Appellants Were Only Allowed to Engage in Limited Discovery with No Depositions of Persons of Their Choosing

After the Appellant borrowers defeated the Bank's motions to dismiss, discovery began in a staged fashion, and was substantially limited by a series of procedural orders. Although the Bank was allowed to take the deposition of each Appellant borrower, the district court initially permitted the Appellant borrowers only to take depositions of the Bank under Fed. R. Civ. P. 30(b)(6), pursuant to which Appellant borrowers proposed topics and the Bank chose the designee to speak on each subject. *See* J.A. at 123-6. Four months later, the Appellant borrowers informed the court of their desire to begin taking depositions of

---

[4] The court also noted that "[w]hether the Bank actually had an intention to place LPMI on the loans all along, and whether the Bank charged higher interest rates to account for this when it entered into the loan agreements with the plaintiffs, remain open factual questions." J.A. at 118. As discussed *infra*, the rate increase analysis is not necessary for determining whether the HPA has been violated.

witnesses of their choosing. *Id.* at 123-9. Such depositions are, of course, authorized by Fed. R. Civ. P. 30(a) and Rule 30(b)(1), and are routinely permitted.[5] The Bank's original suggestion that the parties *begin* with Fed. R. Civ. P. 30(b)(6) depositions then morphed into an objection to any depositions of Appellants' choosing until the *completion* of Fed. R. Civ. P. 30(b)(6) depositions. *Id.* Appellant borrowers objected, *id.*, but the court sided with the Bank, blocking Fed. R. Civ. P. 30(b)(1) depositions for the moment. *See id.* at 24. **Unfortunately, this "moment" never ended**.

Appellant borrowers repeated their request to take depositions of their choosing on October 9, 2013. *Id.* at 123-14. The Bank repeated its objection, maintaining that the 30(b)(6) depositions should be completed before any non-party witnesses could be deposed. *Id.* By this time, the Bank's position clearly was that the Appellant borrowers had no right to take any depositions of any persons who were not designated by the Bank. No citations were provided for this unequivocal and one-sided discovery regime, but the court once again sided, expressly limiting Appellants to Fed. R. Civ. P. 30(b)(6) depositions without any explanation. *Id.* at 133.

---

[5] *See* Commentary to Rule 26(d) (Once the parties have conferred … the parties are free to seek discovery using whatever methods they see fit, in whatever order they see fit, unless the court intervenes.")

On July 28, 2014, after completing the noticed Fed. R. Civ. P. 30(b)(6) depositions, Appellant borrowers renewed for the third time their request to take depositions of witnesses of their choosing. *Id.* at 133-2. The Bank continued to object, still without explanation. *Id.* On September 25, 2014, the court again sided with the Bank, requesting the parties to propose a briefing schedule for motions for partial summary judgment, but not allowing Appellants a chance to take any depositions of their choosing. *See id.* at 133-7.

At that point, discovery amounted to: (a) many documents produced by the Bank, documents it chose to produce along with multiple objections, so that it could withhold what it wished, plus the withholding of nearly 4,000 allegedly privileged documents; and (b) depositions of all the plaintiffs, and of the Bank through the four current or former employees designated by the Bank under Fed. R. Civ. P. 30(b)(6).

> ### 3. The Bank Moves for Summary Judgment and Appellants Respond by Disputing the Facts with Substantial Evidence, Invoking Rule 56(d), and Also Cross-Moving on a Narrow Issue Not Implicating Factual Dispute

The Bank moved for summary judgment on the federal claims. J.A. at 134. The Bank once again presented its twice-rejected argument that the PMI was not "required," but this time attempted to buttress its rejected timing argument with the supposedly undisputed (and supposedly relevant) fact that it did not increase interest rates to make up for the costs of the No Fee program. *See id.* at 1979. No

explanation was made as to why interest rates were logically related to whether the PMI was "required." In support of its motion, the Bank relied upon its own assertions and denials, expressed through its corporate designees' depositions and through its interrogatory answers.

Appellant borrowers responded in several ways. First, they noted that interest rates had nothing to do with whether the PMI was "required" within the meaning of the HPA. Second, they disputed the factual contention that there was no rate increase by citing internal Bank documents to the contrary. For example, Benjamin Wadsworth, a Bank employee, wrote in an email, "I have seen over and over in press releases that we are saying there is no rate hike to compensate for fees that are being waived. However (sic) *we are clearly increasing our rate to help make up for some of the fees being waived*[.]" J.A. at 1944 (emphasis added). Similarly, Tracy O'Donnell, another Bank employee, wrote, "*with the advertising stating there is no add on to the rate for the No Fee Mortgage Plus – it makes me feel dishonest quoting the higher rate and fee*." *Id*. at 1942 (emphasis added).

Third, Appellant borrowers invoked, in the alternative, Fed. R. Civ. P. 56(d), which calls for deferral or denial of summary judgment where a party "cannot present facts essential to justify its opposition," and supported that invocation, as required by Fed. R. Civ. P. 56(d), with a declaration of counsel explaining that

13

further evidence of a rate increase could have been obtained through further discovery, such as depositions of Ms. O'Donnell, Mr. Wadsworth, and others. *Id.* at 1752.

Appellant borrowers also presented an expert declaration of James Panepinto in support of their Rule 56(d) submission, pointing out additional financial discovery that would be important to the rate increase issue. *Id.* at 1730. Mr. Panepinto examined the facts disclosed in the documents and at the depositions of the Bank's designees, and pointed out additional information that would be crucial to prove or disprove a rate increase. *Id*. at 1734-40. Through Panepinto and the declaration of counsel, Appellants sought to demonstrate that the standard of Fed. R. Civ. P. 56(d) for denial or deferral of summary judgment had been met.

The Bank, for its part, responded that Mr. Wadsworth and Ms. O'Donnell were "non-management personnel," and had no basis for these opinions. *Id.* at 1980. This, of course, is a matter that could have been examined at depositions of those witnesses, but none were allowed. The Bank also pointed out that although O'Donnell and Wadsworth asserted that rates had been raised for the No Fee program (thus disputing the central point of the Bank's motion for summary judgment), they referred to this increase as covering the cost of waived closing fees under the No Fee loan product, without explicitly mentioning PMI. *Id.* It is not clear why this is important – a rate increase is a rate increase – but again,

depositions would have clarified exactly what the witnesses were referring to in these short emails, but depositions were not permitted to explore that subject.

Plaintiffs also cross-moved for partial summary judgment, asserting that the Bank clearly "required" LPMI on the loans, and clearly did not disclose it, thus violating § 4905(c) of the HPA. Plaintiffs' simple cross-motion did not implicate any of the disputed facts in the case, and did not, as the Bank has urged, concede that discovery was sufficient for other, more contested issues. *Id.* at 1726.

The district court contemplated the cross-motions for nine months, and on September 30, 2015, without hearing argument, granted summary judgment in favor of the Bank on the federal claims. The court found that the LPMI was not "required" as that term is used in the HPA because there was insufficient evidence of a rate increase, thus accepting the Bank's legal non-sequitur and its assertion that the rate issue was undisputed. *Id.* at 1979-1980. The court, like the Bank, never explained the connection between interest rates and whether PMI was "required." *See id.*

In granting summary judgment on the hotly disputed issue of "rate increase" the court accepted the testimony of the Bank's corporate designees at face value, *id*. at 1980, and dismissed the questions and missing evidence regarding a possible rate increase raised by Plaintiffs' expert. *Id.* at 1982. The court also rejected the testimony of Ms. O'Donnell and Mr. Wadsworth, denigrating them as the Bank

15

had as "non-management Bank employees," *id*. at 1980, as if such employees were not eligible or competent to testify.   The court also accepted the Bank's self-serving narrow interpretation of those persons' emails that because they explicitly referred only to "fees," and not PMI, the employees did not properly place the question of a PMI-related rate increase in dispute..  *Id*. at 1980-1981.   The court missed the fact that referring to PMI as a fee is consistent with what Appellants alleged in the Complaint, *see id.* at 65 ¶23 ("[p]rivate mortgage insurance is among the fees and services that Bank of America expressly agreed to waive"), and is also consistent with how the Bank itself describes PMI.  *See id*. at 905 (describing the No Fee product as one in which "the Bank agreed to waive or pay certain fees typically associated with the closing of a mortgage, including, ***any fees for private mortgage insurance***) (emphasis added).   Again, depositions would have resolved this ambiguity, but none were permitted.

The court also rejected Appellant borrowers' request for additional discovery pursuant to Fed. R. Civ. P. 56(d).   *Id.* at 1982.   The court's only responses to the complaints that no witnesses of Appellants' choosing could be deposed, and more financial information was needed, were that the four hand-picked Bank witnesses testified consistently with one another, and with the Bank's interrogatory answers, and that Appellant borrowers could have asked more questions of these witnesses.  *Id*.  No acknowledgement was made of our adversary

system of litigation, where self-serving statements are not dispositive, and where both sides get to call witnesses and gather evidence.

### 4. Appellants' Motions for Reconsideration, and Newly Discovered Evidence; the Bank's Motion to Dispose of State Law Claims

After the entry of partial summary judgment, Appellant borrowers made two efforts to convince the district court that it had erred, once on the law, and once with newly discovered evidence. Appellant borrowers first sought reconsideration on October 27, 2015, reiterating and elaborating the point that the purported lack of a rate increase was not in any way related to the question whether the PMI was "required," and that the rate increase issue was in any event disputed and subject to a compelling Rule 56(d) objection. J.A. at 1988. The district court contemplated the motion for nine months, but then denied it on July 22, 2016, once again without hearing argument. *See id.* at 1995.

The second motion for reconsideration was different and was based on newly discovered evidence. Once it was clear that the district court was not going to grant relief under Fed. R. Civ. P. 56(d), Appellant borrowers sought to determine whether Ms. O'Donnell or Mr. Wadsworth had left the Bank and might be available for an interview or a declaration. While Ms. O'Donnell was still employed by the Bank, and thus unavailable to Appellant borrowers, Mr. Wadsworth had now left the Bank and was living in Idaho where Appellant

17

borrowers' counsel interviewed him. *See id.* at 2096. He confirmed that the Appellant borrowers were correct about the meaning of his email, and his views at the time, and that both the Bank and the district court were overly narrow in interpreting his words about a rate increase. Mr. Wadsworth explained in his declaration that the rate hike to which he referred was "meant to compensate for the entire No Fee Mortgage Program, including the waiver of the requirement of mortgage insurance for loans with a loan-to value ratio over 80%." *Id.* at 2057.

At about the same time as Mr. Wadsworth was found, the Bank filed a motion for summary judgment on the Appellants' state law claims, relying in part on the court's prior summary judgment order, but also presenting additional arguments addressed to elements of the state law claims which diverged from the federal claims. *Id.* at 1996. Appellant borrowers again opposed the Bank's motion, urging that the district court's prior order was wrong when issued, but even more clearly could not be followed in the face of Mr. Wadsworth's declaration, which disputed the crucial fact of rate increase. Appellants also opposed the summary judgment based on certain principles of state law in which they disagreed with the Bank.

At the same time, Appellant borrowers filed a motion employing the Wadsworth declaration as newly-discovered evidence requiring the vacatur of the summary judgment on the federal claims under Rule 54(b). *Id.* at 2059.

Four months later, on February 24, 2017, without argument or even opinion, the court granted summary judgment in favor of the defendants on the state law claims, denied the newly discovered evidence assertion on the federal claims, and issued a final judgment in favor of the Bank on all claims. *Id.* at 2099. The new Wadsworth declaration was not addressed, and the court granted summary judgment on all of the state law issues raised by Plaintiffs. The court cited two prior orders (dated September 30, 2015 and July 22, 2016) that never even mentioned those state law issues. *See id.* at 2099, 1976, 1994-1.

### 5.    Notice of Appeal

Appellant borrowers timely appealed on March 16, 2017, J.A. at 2100, noting their disagreement with the court's resolution of the federal and state claims, the limitation on discovery, and the arguments based on newly discovered evidence.

## II.    SUMMARY OF ARGUMENT

This is an unusual case, with an unfair and unlawful result. Appellants sued Bank of America for violating state and federal law in connection with mortgage loans. Motions to dismiss were twice denied, some discovery was had, but

19

Appellants (the plaintiffs below) were never given an opportunity to develop their case through depositions of any witnesses of their own choosing, either current Bank employees, former Bank employees, or third parties. No Rule 30(b)(1) depositions were ever permitted.

With a record developed entirely from selected Bank documents, self-serving Bank interrogatory answers, and deposition testimony of four hand-picked witnesses chosen by the Bank in response to a Rule 30(b)(6) organizational deposition notice, the district court granted partial summary judgment to the Bank, extinguishing the federal claims.

The summary judgment ruling -- and the subsequent rulings reaffirming and extending that ruling -- were infirm because:

1. The issue the district court found dispositive – interest rates – is not relevant to the issue the court was deciding, coverage of the federal Act.

2. Even if interest rates were relevant to that issue, and even with the limitations placed upon discovery, Appellants had offered evidence that presented a jury question on interest rates, precluding summary judgment.

3. Appellants had also properly invoked Fed. R. Civ. P. 56(d), seeking the denial or deferral of summary judgment because of the severe limits placed on discovery, which motion was erroneously and prejudicially denied.

4. After the court granted summary judgment to the Bank on the federal claims, Appellants gave up on getting any depositions, located one of the witnesses they had sought to depose, and obtained a sworn statement from him rebutting the core of the district court's ruling. But when the Bank moved for summary judgment on the state claims, the district court took no account of this declaration and granted summary judgment on those claims as well, without explanation.

5. At the same time, plaintiffs employed the same declaration to ask the district court to reconsider its federal summary judgment ruling under Fed. R. Civ. P. 54(b), based upon the newly discovered evidence of the new declaration. The district court denied the motion without explanation.

Both the federal and the state claims should be reinstated and the case returned to the trial court for completion of discovery and trial.

## III.   ARGUMENT

### A.   The District Court Erred in Granting the Bank's Motion for Summary Judgment on the Federal HPA Claim

#### 1.   The Applicable Standard on a Motion for Summary Judgment

Decisions to grant summary judgment are reviewed *de novo*, applying the same standard as in the district court. *Overstreet v. Kentucky Cent. Life Ins. Co.*, 950 F.2d 931, 938 (4th Cir. 1991); *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1127–28 (4th Cir. 1987). Summary judgment is appropriate if "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact...." Fed. R. Civ. P. 56(c). It is not appropriate if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986), nor is it appropriate "even where there is no dispute as to the evidentiary facts but only as to the conclusions to be drawn therefrom." *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979) (quoting *Pierce v. Ford Motor Co.*, 190 F.2d 910, 915 (4th Cir. 1951)). The district court properly observed that at the summary judgment stage, the "chief issue before the court [was] whether the insurance placed on the [Appellant borrowers'] loans was LPMI within the meaning of the HPA; if so, the Bank violated the HPA's disclosure provisions applicable to LPMI." J.A. at 1978. In so doing, the court focused its inquiry on whether the PMI was "required," but incorrectly determined that "[i]f the plaintiffs never paid for the insurance, which in this case would have been in the form of a higher interest rate, and if no individual loan was conditioned on being able to obtain insurance, mortgage insurance was not 'required' within the meaning of the HPA." *Id*. at 1980. The court misconstrued "required" to somehow relate to the interest rate, and, if the interest rate were relevant here, deprived the jury of its right to decide whether the interest rate was increased.

22

### 2. Bank of America "Required" Mortgage Insurance for Appellants' Loans

The HPA defines LPMI as "private mortgage insurance that is required in connection with a residential mortgage transaction, payments for which are made by a person other than the borrower[.]"  12 U.S.C. § 4905(a)(2).  The Bank does not dispute that it purchased the PMI "in connection with a residential mortgage transaction[,]" J.A. at 1978, n.8, nor does it argue that the insurance payments were "made by a person other than the borrower[.]"  *See id.* at 1978.  Rather, the Bank argues, and the district court agreed, that the Bank did not "require" the purchase of mortgage insurance because (1) the Bank bought and paid for the insurance after the loans were closed without affecting the written terms of any individual borrower's loans, and (2) it was undisputed that borrowers did not pay a higher interest rate in order to finance the purchase of the mortgage insurance.  *See id.* at 1980.  The district court's adoption of the Bank's argument was error for each of the reasons addressed below.

### a. A Plain Reading of the Word "Required" and the Statute Confirms That Bank of America Did, in Fact, "Require" The Purchase of Mortgage Insurance

The HPA mandates disclosure of "required" LPMI.  *See* 12 U.S.C. § 4905(a)(2).  "Required" is a simple word that cannot carry all the meaning ascribed to it by the Bank and the district court.  Although the HPA does not define "required," a plain reading of the word and the statute confirms that Bank of

America, did, in fact, "require" the purchase of mortgage insurance for each Appellant borrower's loan. The Bank "required" PMI on these loans because it desired to sell the loans to the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") as a means of "enhancing liquidity." J.A. at 1971, 917. Fannie Mae and Freddie Mac are mortgage purchasers on the secondary market. *Id.* at 917. They buy loans with a loan-to-value ratio greater than 80 percent only if those loans are insured. *Id.*; *see also id.* at 620. Thus, because for all or the vast majority of the class period, the Bank intended to sell every NFMP loan it was making to Fannie Mae and Freddie Mac, it "required" PMI for those loans in order to make them eligible for sale, and it arranged for and imposed that PMI. It did not ask permission of the home purchaser, or give them a choice, or even notice.

The interest rate charged on the loan has absolutely nothing to do with whether PMI was "required." The PMI was either required, or it was optional to the borrower. It was plainly the former because the borrowers had no choice. Courts "must enforce plain and unambiguous statutory language according to its terms." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010). The Fourth Circuit follows the "plain meaning rule" of statutory interpretation, meaning that, "unless there is some ambiguity in the language of a statute, a court's analysis must end with the statute's plain language." *Hillman v. I.R.S.*, 263

F.3d 338, 342 (4th Cir. 2001) (citing *Caminetti v. United States*, 242 U.S. 470, 485 (1917)). When determining whether the language of a statute is plain, a court "must read the words 'in their context and with a view to their place in the overall statutory scheme.'" *King v. Burwell*, __ U.S. ___, 135 S. Ct. 2480, 2489, 192 L. Ed. 2d 483 (2015) (quoting *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)).

Because the HPA does not define "required," the Court may examine the dictionary definition.  *See Fowler v. United States*, 563 U.S. 668 (2011); *Rousey v. Jacoway*, 544 U.S. 320, 326 (2005); *AT & T Corp. v. Iowa Utilities Bd.*, 525 U.S. 366, 394 (1999).  The dictionary defines "require" to mean "1 ... to ask, request, or desire ... [;] 2 ... to ask for authoritatively or imperatively: claim by right and authority: insist upon usu[ally] with certainty or urgency: DEMAND, EXACT ... [;] 3 ... to demand as necessary or essential ... [;] 5 ... to impose a compulsion or command upon (as a person) to do something: demand of (one) that something be done or some action taken: enjoin, command, or authoritatively insist (that someone do something) ...." Webster's New Int'l Dictionary 1929 (3d. ed. 1993). In other words, something that is *required* is not *optional*.  The PMI at issue meets all five of those definitions.  The Bank did, in the words of Webster, insist upon, demand, and impose the very PMI it told Appellant borrowers it would not require. Appellant borrowers had no choice about having PMI.  Further, as discussed

below, by the beginning of 2008, the Bank intended to purchase mortgage insurance for every eligible No Fee loan with a loan-to-value ratio greater than 80 percent.

### b. The Bank "Required" Mortgage Insurance Because When It Closed on Appellants' Loans, It Intended to Purchase Mortgage Insurance

The Bank has admitted that its customary practice is to require mortgage insurance for loans that exceed 80 percent of a home's fair market value and to do so at closing. J.A. at 1971, 917. Here it promised not to do that, but then did so after closing to avoid the HPA disclosures.

As the district court noted, one of the few cases on this subject, *O'Connor v. Wells Fargo Home Mortgage*, *Inc*. held that "the fact that the LPMI was not taken out until after the [Appellant borrowers] closed on their loan does not defeat an argument that LPMI was required on their loan." *Id.* at 118 (citing *O'Connor*, 2011 WL 248006, at *4). Although, "[d]isclosure may be required under the HPA even if LPMI is placed on a mortgage after a loan commitment is made and the Bank had no prior intention to do so." *Id.* (citing *Augustson v. Bank of Am.*, *N.A.*, 864 F. Supp. 2d 422, 430 (E.D.N.C. 2012)). Here, the Bank's intent to place PMI on the loan after loan commitment makes the case for "required" even stronger.

In this case, Appellant borrowers produced clear evidence that the Bank *intended* to purchase mortgage insurance for the No Fee loans, and did so after

closing solely to avoid making the requisite disclosures. In May 2007, just one month after the national rollout of the No Fee loan product, the Bank began requesting bids from mortgage insurance providers for the acquisition of PMI on these loans. J.A. at 731-33. Just a few months later, on August 29, 2007, the Bank began its purchase of PMI for the No Fee loans. *Id.* at 703. By late 2007, the Bank had entered into a series of contracts that it called "forward agreements," in which mortgage insurers agreed to prospectively insure No Fee loans that had not yet been originated. *Id.* at 745–46. By at least the beginning of 2008, the Bank intended to purchase mortgage insurance for *every* eligible No Fee loan with a loan-to-value ratio that was greater than 80 percent. *Id.* at 746.

Strikingly, Gina Turpin, the Bank's No Fee Product Manager, *id.* at 924, one of the witnesses Appellants were not allowed to depose, explained in a document that the mortgage insurance was obtained this way specifically to avoid disclosure under the HPA: "[w]hen the bank purchases a Post Closing Credit Enhancement on the back-end, **it was determined that there are no front-end implications because we didn't have the intent at the time the loan was originated. I think this is the approach they are exploring for NFMP purchase."** *Id.* at 1777. Of course, this is a deception, since the evidence summarized above shows that the Bank had exactly that intent for all or the vast majority of the class period and the

27

life of the No Fee program.[6]  The Bank created a cynical ploy to circumvent the HPA, and the district court fell for it.  In the face of this evidence, a jury should have been allowed to determine whether the Bank "required" PMI.

Having failed twice to convince the trial court at the motion to dismiss stage that the post-closing timing of the placement of PMI created a defense, the Bank argued on summary judgment that the PMI was not "required" for the additional reasons that it did not result in an interest rate increase.  *Id.* at 1982.  This non-sequitur is entirely inconsistent with statutory language, plain meaning, the dictionary, or common sense.  No one reading a statutory passage that refers to "required" PMI would read into it "PMI that raises your interest rate."

It is certainly true that Congress observed that placement of LPMI "*usually* results in a residential mortgage having a higher interest rate than it would in the case of" BPMI, 12 U.S.C. § 4905(c)(1)(B)(i), but nowhere in the statute did Congress limit the disclosure obligations to cases in which an elevated interest rate can be proven, which may be a challenging task in a time of quickly changing rates and competition among lenders.  Simply put, the PMI was "required" on the Dwoskins' loan, the loans of the other named Appellant borrowers, and the loans

---

[6] Every Appellant except for two closed on his or her loan after August 29, 2007, the date on which the Bank began purchasing PMI on the No Fee loans.  *See* J.A. at 67-70.  The other two Appellants closed their loans in June and July 2007, well after the Bank began requesting bids from insurers. *Id.*

of the class members because they had no choice about it. The issue of whether there was a rate increase is simply a damages question, and statutory damages are permitted even without actual damages, 12 U.S.C. § 4907(a)(2), so the lack of an interest rate increase (if proven) would neither disprove liability nor damages.

<b>c.    Appellants Produced Sufficient Evidence to Allow a Jury to Find That They Paid for the LPMI in the Form of Higher Interest Rates</b>

Although Appellant borrowers submit that interest rates have nothing to do with the "required" issue, the district court also erred in basing its summary judgment ruling on the conclusion that there was no rate increase as a matter of undisputed fact. J.A. at 1979-80. In so ruling, the court was unreasonably dismissive of Appellant borrowers' evidence of a rate increase, particularly when they were not allowed to further develop their evidence through depositions, as discussed *infra.*

At least four critical pieces of evidence were sufficient to defeat summary judgment. First, Appellant borrowers produced an e-mail from Benjamin Wadsworth, a Bank employee, who wrote:

> I have seen over and over in press releases that we are saying there is not rate hike to compensate for fees that are being waived. Hoever [*sic*] **we are clearly increasing our rate** to help make up for some of the fees being waived.

*Id.* at 1944. Second, Appellant borrowers produced another e-mail from Tracy O'Donnell, another Bank employee who wrote, "with the advertising stating there

29

is no add on to the rate for the No Fee Mortgage Plus – **it makes me feel dishonest quoting the higher rate** and fee." *Id.* at 1942. Third, in September 2008, the Bank generated an internal presentation stating that **interest rates for some No Fee loans were 0.625 percent higher** because of the "higher cost to originate." *Id.* at 276. Fourth, Appellant borrowers' expert witness James Panepinto opined that, based on the documents he had reviewed and his experience, an **interest rate increase in these circumstances was likely.** *Id.* at 1739-40. He also urged that there was undisclosed evidence that would shed further light on this issue, a point discussed below with respect to the district court's Rule 56(d) ruling. In light of this evidence construed in the light most favorable to Appellant borrowers as well as all reasonable inferences drawn in Appellant borrowers' favor, the district court's granting summary judgment was error.

**B.    The District Court Improperly Denied Appellants' Right to Conduct Full Discovery Under Rule 30 And Committed Reversible Error Under Rule 56(d) When It Denied Appellants' Request to Take Depositions of Persons of Their Choosing**

Appellant borrowers alleged an interest rate increase not as an effort to show that PMI was "required," but as an element of damages. *See* J.A. at 61, 78, 79. The court's granting of summary judgment was erroneous for the reasons stated above (irrelevance to the issue of "required" and disputed facts for the jury), but also because the court did not allow Appellant borrowers to take any depositions of

their choosing, thus violating Rule 30, and thereby did not give Appellants a fair opportunity to make their case through discovery, thus violating Rule 56(d).

Appellant borrowers properly invoked Fed. R. Civ. P. 56(d) because they were not given an adequate opportunity to develop the factual record. "[S]ummary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson*, 477 U.S. at 250. For example, Appellant borrowers were never given the opportunity to depose a single witness of their own choosing, including O'Donnell and Wadsworth, the authors of the two emails quoted above, or Gina Turpin, the ***Project Manager for the entire No Fee program*** who acknowledged that the Bank was seeking ways to circumvent notice under the HPA. J.A. at 1777.

### 1.    Discovery Was Limited in Derogation of Rules 26 and 30

Fed. R. Civ. P. 26(d)(2)(A) states, "Unless, on motion, the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice methods of discovery may be used in any sequence." As noted above in Section B.2., *supra*, Appellant borrowers repeatedly asked for, but were not allowed to take, Rule 30(b)(1) depositions of witnesses of their choosing. Seeking to prove a rate increase, Appellant borrowers sought the depositions of fact witnesses who wrote e-mails that supported their claims. First they were told to wait, and then simply told "no."

As described above, deposition discovery began with the Bank deposing every single Appellant borrower, and Appellant borrowers, in turn, deposing the Bank's Rule 30(b)(6) corporate designees. Although from the beginning Plaintiffs indicated their intention to take Rule 30(b)(1) depositions, *id* at 123-9, the taking of those depositions was deferred. *Id.* at 133.

On July 9, 2013, Appellant borrowers asked for permission to begin Rule 30(b)(1) depositions, *id.* at 123-7, but the court refused, siding with the Bank, which argued that such depositions should not be permitted until Rule 30(b)(6) depositions were completed. *Id.* at 24. This was error. It was not "in the interests of justice" to prohibit all depositions other than those noticed under Rule 30(b)(6). Neither Rule 26 nor Rule 30 permit such a limitation on discovery rights.

The fact that Rule 30(b)(6) allows a party to depose "the organization" does not preclude parties from taking depositions of particular individuals within the organization. Thus parties remain free to take ordinary depositions of particular individuals within an organization even if they have already explored the same topics with a Rule 30(b)(6) witness. *Nationstar Mortg.*, *LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*, 316 F.R.D. 327, 333 (D. Nev. 2016); *Myhre v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l Missionary Soc.*, 298 F.R.D. 633, 640 (S.D. Cal. 2014); *McPherson v. Wells Fargo Bank*, *N.A.*, 292 F.R.D. 695, 698 (S.D. Fla. 2013). Under the Rules, parties are not limited to a

single method or source when pursuing discovery, which was unfortunately the case here

Of course, when the deferral of depositions of Appellants borrowers' choosing morphed into permanent denial of that right, the violation became more serious, and when the court entertained a motion for partial summary judgment with this limitation still in place, it violated Rules 26, 30 and 56 in one fell swoop. No explanation was given at any time for this unique and unprecedented limitation. Appellant borrowers are aware of no case that even suggests, much less holds, that a party may be limited to Rule 30(b)(6) depositions to prove their entire case.

Such an approach also violates the general principle that parties are permitted to depose witnesses of their choosing. "It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances such an order would likely be in error." *Medlin v. Andrew*, 113 F.R.D. 650, 653 (M.D.N.C. 1987) (*quoting Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979)); s*ee also* 8 Wright & Miller, *Federal Practice and Procedure*, § 2037 (1986 Supp.). "As a consequence, most requests that a deposition not be conducted are denied." *Medlin* 113 F.R.D. at 653. Here the error is more egregious than suggested in these authorities, since it was not one deposition that was precluded, but depositions of anyone not chosen by the Bank. A party that can unilaterally pick all the witnesses can (and did) win the case.

### 2. The District Court Improperly Denied Appellants' Invocation of Rule 56(d)

Fed. R. Civ. P. 56(d) provides that:

If a non-movant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

1)  defer considering the motion or deny it;
2)  allow time to obtain affidavits or declarations or to take discovery; or
3)  issue any other appropriate order.

Fed. R. Civ. P. 56(d). This Court reviews a district court's Rule 56(d) ruling for an abuse of discretion. *McCray v. Maryland Dep't of Transp.*, *Maryland Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014). But, as this Circuit recently instructed:

A Rule 56(d) motion **must** be granted where the nonmoving party has not had the opportunity to discover information that is essential to his opposition. Further, such motions are to be **broadly favored and should be liberally granted** in order to protect non-moving parties from premature summary judgment motions.

*Id.* at 484 (internal citations and quotation marks omitted) (emphasis added). Failing to do something that "must" be done is an abuse of discretion, and rejecting a Rule 56(d) invocation with little explanation when it is "broadly favored" and to be "liberally granted" is likewise an abuse of discretion.

Rather than "broadly favoring," the Rule 56(d) invocation or "liberally granting" it, the Court gave it short shrift and stood by its unusual decision to allow plaintiffs **no** depositions of persons of their choosing in a five-year litigation

ending in summary judgment against them. As in *McCray*, the Bank had exclusive control of the key evidence, *i.e.*, its internal pricing scheme, and the Bank was improperly allowed to win the case by resting on its denials and blocking further discovery from other sources.

Neither the Bank nor the court provided satisfactory responses to the Rule 56(d) request. The Bank argued that it had produced lots of documents, and provided hours of testimony of its hand-picked witnesses. With respect, this misses the point of the adversary system. It is a large bank with millions of documents and thousands of witnesses; giving Appellants a smattering of each is not full or fair discovery.

The Bank also argued that witnesses chosen by Appellants would be cumulative, but even if the topics to be addressed at the two depositions would overlap, the answers given might not be the same. *Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 487 (N.D. Cal. 2012) (*citing Mitchell Eng'g v. City & Cty. of San Francisco*, No. C 08-04022 SI, 2010 WL 455290, at \*1 (N.D. Cal. Feb. 2, 2010). Thus, even if a topic has already been explored with a 30(b)(6) witness, a party is not precluded from exploring the same topic with an individual witness. Individual witness depositions and the corporate representative deposition "serve distinct purposes, impose different obligations ..., and involve different ramifications" *Commodity Futures Trading Comm'n v.*

35

*Midland Rare Coin Exchange*, *Inc.*, 1999 U.S. Dist. LEXIS 16939 (S.D. Fla. 1999).

The Bank also argued that the case had been pending for a long time, but that is no excuse for limiting discovery throughout, and all the more reason why it is startling that there was not time or occasion for any depositions of persons selected by Appellant borrowers.

The Bank also denigrated employees who wrote intriguing emails, such as O'Donnell and Wadsworth, as "non-managerial" personnel with no basis for their views.  The Bank entrusted them to sell the No Fee product, but it did not trust them enough to notice whether or not rates were up.  Clearly, depositions would be a far better way of establishing the basis for their views, or lack thereof, and their job responsibilities, than characterizing and denigrating them.

Finally, the Bank nitpicks the wording of these persons' rather short emails, saying that because they said there was a rate increase under the No Fee product (which standing alone disputes a key point on the Bank's summary judgment motion) but attributed it to waiver of fees, not explicitly mentioning PMI, minimizes the significance of their statements.  But as noted above, fees are sometimes used to include the costs of PMI, and in any event, there was only one No Fee program, and one interest rate at any given time, so O'Donnell and Wadsworth disputed a key point made by Malouf – that there was no rate increase.

Whether these undeposed witnesses attributed the increase to an attempt to recoup closing costs or recover LPMI, or both, is a detail, and one that could have been fleshed out at a deposition. And of course, Mr. Wadsworth's subsequent declaration demonstrates that the Bank and the district court misinterpreted his words. J.A. at 2057.

The issue under Fed. R. Civ. P. 56(d) is not whether the emails themselves blocked summary judgment (although that is discussed in Section III.A.2.c above) but whether their authors were legitimate candidates for deposition who might have provided further evidence of the disputed rate increase. If evidence need not be admissible to block summary judgment, *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir. 1992); it is *a fortiori* that these emails ought to open the door to depositions to seek more comprehensive evidence.

Depositions of Wadsworth, O'Donnell and Turpin, and inquiries as to the long list of items identified by Plaintiffs' expert, *see* J.A. at 1746-47, would have rounded out a record that would have precluded summary judgment.

If "Rule 56(d) motions must be granted where the nonmoving party has not had the opportunity to discover information that is essential to his opposition," and if such motions "are to be broadly favored and should be liberally granted in order

37

to protect non-moving parties from premature summary judgment motions," then this is an exceptionally strong case under Rule 56(d). *McCray*, 741 F.3d 483-484.

### C. The District Court's Subsequent Grant of Summary Judgment on the State Law Claims was Error Because the Declaration from Mr. Wadsworth Plainly Put a Crucial Fact in Dispute

Months after the District Court entered summary judgment on the federal claims, the Bank moved for summary judgment on the state law claims, relying almost exclusively on the prior summary judgment order.   However, by that time Appellants had located Mr. Wadsworth, one of the authors of emails quoted above asserting a rate increase.   He was working for another firm in Idaho and thus available without legal process.  J.A. at 2095-89.   Appellant borrowers' counsel interviewed him, and he signed a  Declaration which was interposed in opposition to the motion for summary judgment on state claims.   *Id.* at 2057. In his Declaration, Mr. Wadsworth clarified the thoughts expressed in his email – specifically, whether the Bank charged higher interest rates, and whether that was to offset the cost of mortgage insurance.  Mr. Wadsworth stated that the Bank and the District Court had read his email too narrowly, and explained that he was referring to an interest rate hike caused by the entire No Fee program, including both the waiver of closing costs and of mortgage insurance:

> [Appellant borrowers' Counsel] asked me whether I meant to say that the rate hike was to compensate solely for the fee waiver, or meant to compensate for the entire No Fee Mortgage Program, including the waiver of the requirement of mortgage insurance for loans with a loan-to-value ratio over 80%. I told him that I was speaking more generally, it would be the whole package of benefits, and that the mortgage insurance waiver looked like one of the more attractive and important parts of the program.

*Id.* at ¶ 4.

Mr. Wadsworth's declaration creates a genuine issue of material fact regarding the rate increase issue, and blocks summary judgment on the state claims, which were dismissed because of the lack of a rate increase.

The court order does not explain why Mr. Wadsworth's Declaration should not block summary judgment. Without reasons, it is even harder to accept Judge Blake's conclusions that Mr. Wadsworth's sworn testimony is not sufficient to deny summary judgment.

### D. The District Court's Denial of Appellants' Motion for Reconsideration Based on Newly Discovered Evidence Was Error

At the same time the state law summary judgment was being litigated, Plaintiffs also filed a motion for reconsideration of the summary judgment on the federal claims under Rule 54(b), based on the Wadsworth Declaration as newly discovered evidence. It should have been granted.

"A motion for reconsideration is appropriate to correct manifest errors of law or fact or to present newly discovered evidence." *Potter v. Potter*, 199 F.R.D.

550 (D. Md. 2001).  In the Fourth Circuit, the standard governing relief on the basis of newly discovered evidence is:

> (1) the evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the new evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended.

*Boryan v. United States*, 884 F.2d 767, 771 (4th Cir. 1989).  "Thus, in order to support a motion for reconsideration, the movant is obliged to show . . . that this evidence was newly discovered or unknown to it . . ., [and] that it could not with reasonable diligence have discovered and produced such evidence. . ."  *Id.; see also Henley v. FMC Corp.*, 20 F. App'x 108, 115 (4th Cir. 2001) (district court properly granted reconsideration based on the newly discovered evidence, even though the parties knew of the existence of the witness prior to trial).  Even though the Wadsworth declaration meets all of these requirements, the court did not even address this argument in its order.  J.A. at 1994-1, 1994-5.

The Bank argued only that the Declaration was too late, but Appellant borrowers' delay in obtaining and submitting the Declaration stemmed from the district court's stubborn refusal to allow a deposition, and the lack of process to obtain testimony from witnesses like Wadsworth.  Once those legal methods of compelling testimony were clearly rejected, Appellant borrowers sought and found

Wadsworth, who voluntarily gave his sworn statement. There is nothing untimely about that.

The Declaration is both timely and admissible, and provides critical newly discovered evidence that contradicts the evidence relied upon in the District Court's prior finding that there was no evidence of an interest rate bump. The Declaration creates a genuine issue of material fact and it alone should have precluded the District Court's grant of the Bank's Motion for Summary Judgment on Appellant borrowers' state law claims.[7]

Finally, we would note that, as a matter of equity and good practice, the courts should avoid having federal claims remain moribund while parallel state claims proceed. The Bank should answer for its conduct under both state and federal law.

## IV.    CONCLUSION

Appellant borrowers respectfully request that the Court vacate the district court's orders granting summary judgment on the federal and state claims, and remand for the continuation of discovery sufficient for trial. The court may also

---

[7] Appellants alleged violations of consumer protection statutes in California, Illinois, Maryland, New Mexico, New York, Washington, and Wisconsin. J.A. at 80. The court, without a line of analysis, dismissed all of these claims with a sentence. *Id.* at 2099. The declarations obtained by Appellants' counsel were more than enough to create factual issues under these various statutes that warranted the court's analysis.

wish to instruct the trial court to grant Appellants' motion for partial summary judgment, which does not address any disputed factual issues.

## V.    REQUEST FOR ORAL ARGUMENT

Appellant borrowers request oral argument. The case presents issues not addressed by this or other courts of appeal regarding the HPA, and also a unique circumstance regarding Fed. R. Civ. P. 56(d) – a case in which Appellant borrowers were not allowed to take a single deposition of a witness of their choosing, including identified personnel authoring relevant documents, and then suffered summary judgment for failing to provide sufficient evidence of their claims.

Respectfully Submitted,

/s/ James C. White
James C. White
PARRY TYNDALL WHITE
100 Europa Drive, Suite 401
Chapel Hill, North Carolina 27517
(919) 246-4676

Richard D. Heideman
Noel J. Nudelman
Tracy Reichman Kalik
HEIDEMAN NUDELMAN & KALIK, P.C.
1146 19th Street, N.W., Suite 500
Washington, DC 20036
(202) 463-1818

Leonard B. Simon
LAW OFFICES OF LEONARD B. SIMON, P.C.
655 West Broadway, Suite 1900
San Diego, California  92101
(619) 338-4549

Dhamian Blue
BLUE LLP
205 Fayetteville Street, Suite 300
Raleigh, North Carolina  27601
(919) 833-1921

Richard S. Wayne
STRAUSS & TROY, LPA
150 East 4th Street
Cincinatti, Ohio  45202
(513) 621-2120

*Counsel for Appellants*

# CERTIFICATE OF COMPLIANCE

1.  This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    [ X ] this brief contains [*10,247*] words.

    [   ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.  This brief document complies with the typeface and type style requirements because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

    [   ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: May 10, 2017                          /s/ James C. White
                                             *Counsel for Appellants*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 10th day of May, 2017, I caused this Brief of Appellants and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Bradley R. Kutrow
> Wm. Grayson Lambert
> Brian P. Troutman
> McGuireWoods, LLP
> 201 North Tyron Street, Suite 3000
> Charlotte, North Carolina  28202
> (704) 343-2000
>
> *Counsel for Appellee*

I further certify that on this 10th day of May, 2017, I caused the required copies of the Brief of Appellants and Joint Appendix to be hand filed with the Clerk of the Court.

/s/ James C. White
*Counsel for Appellants*
